UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Meagean Shriner,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Monro, Inc.**<br><br>Defendant. | No.<br><br>Judge<br>Magistrate Judge<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiff, Meagean Shriner ("Plaintiff"), individually and on behalf of all other persons similarly situated, sues the Defendant, Monro, Inc. (hereafter referred to as "Monro" or "Defendant") and alleges as follows:

## PRELIMINARY STATEMENT

1. This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.;* Ohio Minimum Fair Wage Standards Act ("OMWFSA"), O.R.C. § 4111.01, *et seq*.; Ohio Prompt Pay Act, O.R.C. § 4113.15, O.R.C. § 2307.60 and Fed. R. Civ. P. 23 for Monro's failure to pay Plaintiff and other similarly-situated employees all earned overtime wages.

2. Plaintiff, the Collective Members and the Class Members are current and former employees of Monro in Ohio. Plaintiff brings this action on behalf of himself and similarly-situated current and former non-exempt hourly employees who worked for Monro in Ohio.

3. Under the FLSA and OMWFSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their regular rates of pay for all time they spend working in excess of 40 hours in a given workweek. Monro failed to pay Plaintiff, the Collective Members and the Class Members one and one-half times their regular rate of pay for all time they spent working in excess of 40 hours in a given workweek. Plaintiff therefore brings

this Class Action and Collective action Complaint pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b) for Monro's violations of federal and Ohio law as detailed further below.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.* because this civil action arises under the laws of the United States.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiff and the Collective Members occurred within this District.

6. At all relevant times, Plaintiff has been a resident of Ohio and performed work for Monro in this judicial district.

7. Monro regularly conducts business in and has engaged in the wrongful conduct alleged herein – and, thus, is subject to personal jurisdiction in – this judicial district.

8. Plaintiff, the Collective Members and the Class Members in their work for Monro were employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

## PARTIES

9. At all times material to the matters alleged in this Complaint, Plaintiff was an employee of Monro.

10. Plaintiff was employed by Monro as an assistant manager from approximately October 2025 through approximately February 2026.

11. The Collective Members are all current and former non-exempt hourly employees who worked for Monro in Ohio at any point in the three years preceding the filing of the original Complaint.

12. The Class Members are all current and non-exempt hourly employees who worked for Monro in the state of Ohio at any point in the three years preceding the filing of the Complaint.

13. The Class and Collective Members are non-exempt from the OMFWSA and FLSA overtime requirements.

14. At all material times, Monro was licensed to transact business in the State of Ohio.

15. Under the OMFWSA and FLSA, Monro is an employer. At all relevant times, Monro had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Monro. As a person who acted in the interest of Monro in relation to the company's employees, Monro is subject to liability under the OMFWSA and FLSA.

16. At all material times, Plaintiff and the Class and Collective Members were employees of Monro as defined by the OMFWSA and FLSA, 29 U.S.C. § 203(e)(1).

17. At all material times, Plaintiff and the Class and Collective Members were non-exempt employees under 29 U.S.C. § 213(a)(1).

18. Plaintiff has given her written consent to be named party Plaintiff in this action pursuant to 29 U.S.C. § 216(b), a true and accurate copy of which is attached as "**Exhibit A**" and is attached again hereto.

## FACTUAL ALLEGATIONS

19. Monro owns and operates hundreds of tire and auto repair shops across the United States.

20. Plaintiff was employed by Monro as an assistant manager at multiple locations in Solon and South Euclid, Ohio from approximately October 2025 through approximately February 2026.

21. The Collective Members are all current and former non-exempt employees who worked for Monro at any point in the three years preceding the filing of this Complaint. The Collective Members are non-exempt from the FLSA's overtime requirements.

22. The Class Members are all current and former non-exempt employees who worked for Monro in Ohio at any point in the three years preceding the filing of this Complaint. The Class Members are non-exempt from the OMFWSA's overtime requirements.

23. At all relevant times, Plaintiff was compensated on an hourly basis.

24. In her work for Monro, Plaintiff routinely worked in excess of forty hours in a given workweek.

25. During each and every workweek, Plaintiff, the Class and Collective Members were paid on an hourly basis.

26. At all relevant times, Plaintiff, the Collective Members and the Class Members were subject to Monro's Meal Break Policy.

27. Pursuant to Monro's Meal Break Policy, Monro automatically deducts a thirty-minute meal break for each and every shift worked by Plaintiff, the Collective Members and the Class Members.

28. Monro made this automatic 30-minute deduction from Plaintiff's, the Collective Members' and the Class Members' pay regardless of whether they were actually permitted to take a meal break, regardless of whether they were permitted to take a full thirty-minute meal break, and regardless of whether they were completely relieved from duty for thirty-minutes.

29. The job demands of Plaintiff, the Collective Members and the Class Members routinely foreclosed their ability to take any meal break, prohibited them from taking a full thirty-minute meal break, or prohibited them being completely relieved from duty for thirty-minutes.

30. Nevertheless, Monro automatically deducted thirty minutes from every shift worked by Plaintiff, the Collective Members and the Class Members, thereby denying them lawful minimum and overtime wages.

31. Additionally, Monro has engaged in a consistent, widespread and illegal practice of time clock manipulation or "time shaving."

32. Plaintiff, the Collective Member and the Class Members frequently work in excess of 40 hours in a given workweek; however, in such instances, Monro routinely edits the time records of Plaintiff, the Collective Members and the Class Members so that are paid no overtime or otherwise paid less overtime than required by law.

33. Additionally, Monro has a company wide practice of failing to pay Plaintiff, the Collective Members' and the Class Members' all owed wages on Plaintiff, the Collective Members' and the Class Members' regularly scheduled pay dates.

34. At all relevant times, Monro failed to keep accurate time and pay records for Plaintiff, the Collective Members and the Class Members as required by federal and Ohio law.

35. Substantial discrepancies exist between the amount of time that Plaintiff, the Collective Members and the Class Members actually worked and the amount of time that Plaintiff, the Collective Members and the Class Members were paid by Monro.

36. As a result of Monro's company-wide policies, Plaintiff and Class and Collective Members were not paid for all time worked each day and are owed significant unpaid wages.

37. Monro's method of paying Plaintiff and Class and Collective Members in

violation of federal and Ohio law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Monro knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

38. Plaintiff made multiple complaints to Monro regarding the illegal wage practices detailed herein.

39. By February 2026, Monro made the decision to terminate Plaintiff's employment.

40. Monro's termination of Plaintiff was retaliatory and was in further violation of the federal and state law.

## COLLECTIVE ACTION ALLEGATIONS

41. Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

42. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) on her own behalf and as a representative of individuals similarly situated who are current or former non-exempt hourly employees employed in Ohio by Monro.

43. Monro subjected all of their non-exempt hourly employees, including Plaintiff and the Collective Members, to their policy and practice of failing to pay for all hours worked and improperly calculating overtime rates in violation of 29 U.S.C. §§ 206 and 207.

44. Plaintiff's claims stated in this Complaint are essentially the same as those of the Collective Members. This action is properly maintained as a collective action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiff is identical or substantially similar.

45. The Collective Members perform or have performed the same or similar work as Plaintiff.

46. Monro's failure to pay overtime compensation required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of Plaintiff or the Collective Members.

47. Although the exact amount of damages may vary among the Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The claims of all Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Monro that caused harm to all of the Collective Members.

48. As such, Plaintiff brings these FLSA claims as a collective action on behalf of the following class:

> **All of Monro's current and former non-exempt hourly employees who worked in Ohio at any time from three years preceding the filing of the Complaint to the present.**

49. Monro's unlawful conduct, as described herein, is pursuant to their corporate policy or practice of minimizing labor costs by refusing and/or failing to properly compensate its employees according to the FLSA.

50. Monro is aware or should have been aware that federal law prohibited them from not paying Plaintiff and the Collective Members all minimum wage and overtime as detailed herein.

51. Monro's unlawful conduct has been widespread, repeated, and consistent.

52. This action is properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

53. Upon information and belief, the individuals similarly situated to Plaintiff includes hundreds of non-exempt hourly employees currently and/or formerly employed by Monro. Plaintiff is unable to state the precise number of similarly-situated employees because that

information is solely in Monro's possession, custody, or control, but it can be readily ascertained from their employment records.

54. Notice can be provided to the Collective Members by First Class Mail to the last address known to Monro, via email at the last known email address known to Monro, and by text message to the last known telephone number known to Monro.

## OHIO RULE 23 CLASS DEFINITIONS AND ALLEGATIONS

55. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

56. Plaintiff brings Claims for Relief for violation of Ohio wage and hour laws as a class action pursuant to Rule 23(a), (b)(2), and (b)(3). Plaintiff brings these claims on behalf of himself and all members of the following class comprised of:

> **Rule 23 Class**
>
> **The Class Members are all of Monro's current and former non-exempt hourly employees who worked in Ohio at any time from three years preceding the filing of the Complaint to the present.**

**Numerosity (Rule 23(a)(1)).**

57. The Class Members are so numerous that joinder of all members is impracticable. Plaintiff on information and belief alleges, that Monro employed greater than one hundred people who satisfy the definition of the Class Members.

**a. Existence of Common Questions of Law and Fact (Rule 23(a)(2)).**

58. Common questions of law and fact exist as to the Plaintiff and the Class Members including, but not limited to, the following:

a. Whether Monro unlawfully failed to pay the Class Members all overtime wages in violation of the Ohio Minimum Fair Wage Standards Act ("OMFWSA");

b. Whether Monro unlawfully failed to keep and maintain accurate and true records of the hours worked by the Class Members as required by applicable law; and

c. The damages sustained and the proper measure of restitution recoverable by members of the Class Members.

**b. Typicality (Rule 23(a)(3)).**

59. Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like the Class Members, was subjected to Monro's illegal scheme to maximize profits by depriving their employees of minimum wage and overtime compensation.

**c. Adequacy (Rule 23(a)(4)).**

60. Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.

**d. Injunctive and Declaratory Relief (Rule 23(b)(2)).**

61. Class certification of the Rule 23 claims is appropriate pursuant to Rule 23(b)(2) because Monro acted or refused to act on grounds generally applicable to the Class Members, making appropriate declaratory relief with respect to the Class Members as a whole.

**e. Predominance and Superiority of Class Action (Rule 23(b)(3)).**

62. Class certification of the Rule 23 claims is also appropriate under Rule 23(b)(3) because questions of law and fact common to the Class Members predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Monro's common and uniform policies and practices illegally deprived Plaintiff and all similarly situated employees of wages; thus, making the question of liability and damages much more manageable and efficient to

resolve in a class action, compared to hundreds of individual trials. The damages suffered by individual Class Members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Monro's practices.

63. Plaintiff intends to send notice to all Class Members to the extent required by Rule 23.

**COUNT ONE: FAIR LABOR STANDARDS ACT**
**FAILURE TO PAY FOR ALL HOURS WORKED**
**AND IMPROPER OVERTIME RATE**
**(on behalf of Plaintiff and the Collective Members)**

64. Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

65. In their work for Monro, Plaintiff and the Collective Members routinely worked in excess of forty hours in a given workweek.

66. During each and every workweek, Plaintiff and Collective Members were paid on an hourly basis.

67. Under the FLSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their regular rate of pay for all time they spend working in excess of 40 hours in a given workweek.

68. The FLSA requires and employer to keep records that include certain identifying information about the employee and data about the hours worked and the wages earned. The law requires this information to be accurate. The following is a listing of the basic records that an employer must maintain: (1) employee's full name and social security number; (2) address, including zip code; (3) birth date, if younger than 19; (4) sex and occupation; (5) time and day of week when employee's workweek begins; (6) hours worked each day; (7) total hours worked each

workweek; (8) basis on which employee's wages are paid (e.g., "$9 per hour", "$440 a week", "piecework"); (9) regular hourly pay rate; (10) total daily or weekly straight-time earnings; (11) total overtime earnings for the workweek; (12) all additions to or deductions from the employee's wages; (13) total wages paid each pay period; and (14) date of payment and the pay period covered by the payment. FLSA Factsheet #21.

69. "While the FLSA does not expressly set forth a requirement of prompt payment, such a requirement is clearly established by the authorities . . . ." *See e.g., United States v. Klinghoffer Bros. Realty Corp.,* 285 F.2d 487, 491 (2d Cir. 1960).

70. The Supreme Court explained that the Act's liquidated damages provision: constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency and general well-being of workers' and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, 89 L. Ed. 1296, 65 S. Ct. 895 (1945) (footnote omitted).

71. For purposes of computing pay due under the Fair Labor Standards Act, a single workweek may be established for a plant or other establishment as a whole or different workweeks may be established for different employees or groups of employees. Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him. The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act. *See* 29 C.F.R. 778.105.

72. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made. *See* 29 C.F.R. § 778.106.

73. "Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry." 29 C.F.R. § 785.18. "They promote the efficiency of the employee and are customarily paid for as working time." *Id.* "They must be counted as hours worked." *Id.*

74. "Bona fide meal periods are not worktime." 29 C.F.R. § 785.19. "Bona fide meal periods do not include coffee breaks or time for snacks." *Id.* "These are rest periods." *Id.* "The employee must be completely relieved from duty for the purposes of eating regular meals."

75. Ordinarily, a break must be at least 30-minutes in length to be considered a "bona fide meal period." *See id.*

76. Moreover, a meal break must be paid if the employee is required to perform any duties, whether active or inactive, while eating. *See id*.

77. At all relevant times, Plaintiff and the Collective Members were subject to Monro's Meal Break Policy.

78. Pursuant to Monro's Meal Break Policy, Monro automatically deducts a thirty-minute meal break for each and every shift worked by Plaintiff and the Collective Members.

79. Monro made this automatic 30-minute deduction from Plaintiff's and the Collective Members' pay regardless of whether they were actually permitted to take a meal break, regardless of whether they were permitted to take a full thirty-minute meal break, and regardless of whether they were completely relieved from duty for thirty-minutes.

80. The job demands of Plaintiff and the Collective Members routinely foreclosed their ability to take any meal break, prohibited them from taking a full thirty-minute meal break, or prohibited them being completely relieved from duty for thirty-minutes.

81. Nevertheless, Monro automatically deducted thirty minutes from every shift worked by Plaintiff and the Collective Members, thereby denying them lawful minimum and overtime wages.

82. Additionally, Monro has engaged in a consistent, widespread and illegal practice of time clock manipulation or “time shaving.”

83. Plaintiff and the Collective Members frequently work in excess of 40 hours in a given workweek; however, in such instances, Monro routinely edits the time records of Plaintiff and the Collective Members so that they are paid for no more than forty straight-time hours or are otherwise paid less overtime than what is legally required.

84. Additionally, Monro has a company-wide practice of failing to pay Plaintiff and the Collective Members all owed wages on Plaintiff, the Collective Members’ and the Class Members’ regularly scheduled pay dates.

85. At all relevant times, Monro failed to keep accurate time and pay records for Plaintiff and the Collective Members as required by federal law.

86. Substantial discrepancies exist between the amount of time that Plaintiff and the Collective Members actually worked and the amount of time that Plaintiff and the Collective Members were paid by Monro.

87. As a result of Monro’s company-wide policies, Plaintiff and the Collective Members were not paid for all time worked each day and are owed significant unpaid wages.

88. Monro’s method of paying Plaintiff and the Collective Members in violation of

federal law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Monro knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

89. As a result of Monro's failure or refusal to pay Plaintiff and the Collective Members for all hours worked, Monro violated 29 U.S.C. § 207(a). Plaintiff and the Collective Members are therefore entitled to compensation of one and one-half times their regular rate of pay, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**COUNT TWO: OHIO MINIMUM FAIR WAGE STANDARDS ACT**
**FAILURE TO PAY FOR ALL HOURS WORKED**
**AND IMPROPER OVERTIME RATE**
**(on behalf of Plaintiff and the Class Members who elect to opt-in)**

90. Plaintiff and the Class Members reallege and incorporate by reference all allegations in all preceding paragraphs.

91. "FLSA and Ohio Minimum Fair Wage Standards Act claims are subject to [the] same standards." *Craig v. Landry's, Inc.*, No. 1:16-CV-277, 2016 WL 3406032, at *3 (S.D. Ohio June 21, 2016) (citing *Haight*; *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp.2d 725, 732 (S.D. Ohio 2006); *Pritchard v. Dent Wizard Int'l. Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002)).

92. In their work for Monro, Plaintiff and the Class Members routinely worked in excess of forty hours in a given workweek.

93. During each and every workweek, Plaintiff and the Class Members were paid on an hourly basis.

94. Under Ohio law, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their regular rate of pay for all time they spend working in excess of 40 hours in a given workweek.

95. Ohio law requires and employer to keep records that include certain identifying information about the employee and data about the hours worked and the wages earned. The law requires this information to be accurate. The following is a listing of the basic records that an employer must maintain: (1) employee's full name and social security number; (2) address, including zip code; (3) birth date, if younger than 19; (4) sex and occupation; (5) time and day of week when employee's workweek begins; (6) hours worked each day; (7) total hours worked each workweek; (8) basis on which employee's wages are paid (e.g., "$9 per hour", "$440 a week", "piecework"); (9) regular hourly pay rate; (10) total daily or weekly straight-time earnings; (11) total overtime earnings for the workweek; (12) all additions to or deductions from the employee's wages; (13) total wages paid each pay period; and (14) date of payment and the pay period covered by the payment.

96. "While the [Ohio law] does not expressly set forth a requirement of prompt payment, such a requirement is clearly established by the authorities . . . ." *See e.g., United States v. Klinghoffer Bros. Realty Corp.,* 285 F.2d 487, 491 (2d Cir. 1960).

97. The Supreme Court explained that the Act's liquidated damages provision: constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency and general well-being of workers' and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, 89 L. Ed. 1296, 65 S. Ct. 895 (1945) (footnote omitted).

98. For purposes of computing pay due under Ohio law, a single workweek may be established for a plant or other establishment as a whole or different workweeks may be established

for different employees or groups of employees. Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him. The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act. *See* 29 C.F.R. 778.105.

99. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made. *See* 29 C.F.R. § 778.106.

100. "Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry." 29 C.F.R. § 785.18. "They promote the efficiency of the employee and are customarily paid for as working time." *Id.* "They must be counted as hours worked." *Id.*

101. "Bona fide meal periods are not worktime." 29 C.F.R. § 785.19. "Bona fide meal periods do not include coffee breaks or time for snacks." *Id.* "These are rest periods." *Id.* "The employee must be completely relieved from duty for the purposes of eating regular meals."

102. Ordinarily, a break must be at least 30-minutes in length to be considered a "bona fide meal period." *See id.*

103. Moreover, a meal break must be paid if the employee is required to perform any duties, whether active or inactive, while eating. *See id*.

104. At all relevant times, Plaintiff and the Collective Members were subject to Monro's Meal Break Policy.

105. Pursuant to Monro's Meal Break Policy, Monro automatically deducts a thirty-minute meal break for each and every shift worked by Plaintiff and the Class Members.

106. Monro made this automatic 30-minute deduction from Plaintiff's and the Class Members' pay regardless of whether they were actually permitted to take a meal break, regardless of whether they were permitted to take a full thirty-minute meal break, and regardless of whether they were completely relieved from duty for thirty-minutes.

107. The job demands of Plaintiff and the Class Members routinely foreclosed their ability to take any meal break, prohibited them from taking a full thirty-minute meal break, or prohibited them being completely relieved from duty for thirty-minutes.

108. Nevertheless, Monro automatically deducted thirty minutes from every shift worked by Plaintiff and the Class Members, thereby denying them lawful minimum and overtime wages.

109. Additionally, Monro has engaged in a consistent, widespread and illegal practice of time clock manipulation or "time shaving."

110. Plaintiff and the Class Members frequently work in excess of 40 hours in a given workweek; however, in such instances, Monro routinely edits the time records of Plaintiff and the Class Members so that they are paid for no more than forty straight-time hours or are otherwise paid less overtime than that which is legally required.

111. Additionally, Monro has a company-wide practice of failing to pay Plaintiff and the Class Members all owed wages on Plaintiff and the Class Members' regularly scheduled pay dates.

112. At all relevant times, Monro failed to keep accurate time and pay records for Plaintiff and the Class Members as required by federal law.

113. Substantial discrepancies exist between the amount of time that Plaintiff and the Class Members actually worked and the amount of time that Plaintiff and the Class Members were paid by Monro.

114. As a result of Monro's company-wide policies, Plaintiff and the Class Members were not paid for all time worked each day and are owed significant unpaid wages.

115. Monro's method of paying Plaintiff and the Class Members in violation of Ohio law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Monro knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

116. As a result of Monro's failure or refusal to pay Plaintiff and the Class Members for all hours worked, and Monro's failure or refusal to pay Plaintiff and the Class Members one-and-one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in any given workweek, Plaintiff and the Class Members are entitled to compensation of one and one-half times their regular rate of pay, to be proven at trial, plus treble damages, together with interest, reasonable attorney's fees, and costs.

**COUNT THREE: OHIO PROMPT PAY ACT**
**(on behalf of Plaintiff and the Class Members who decline to opt-out)**

117. Plaintiff and the Class Members reallege and incorporate by reference all allegations in all preceding paragraphs.

118. During all relevant times, Monro was covered by O.R.C. § 4113.15, and Plaintiff and the Class Members were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

119. O.R.C. § 4113.15(A) requires that Monro pay Plaintiff and the Class Members all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

120. Section 4111.10(C) specifically states that it applies to employees seeking to "join as a party plaintiff in any civil action that is brought under this section." "Because § 4111.10(C) states it applies only to 'this section,' i.e., civil actions brought under the OMFWSA, it does not apply to Ohio's Prompt Pay Act." *Oglesby v. FedEx Ground Package Systems, Inc.*, Case No. 3:20-cv-00346 at Doc. #78, pp. 11-12 (S.D. Ohio, March 23, 2023).

121. By failing to pay Plaintiff and the Class Members all wages due to them under the FLSA, Monro has also violated the Ohio Prompt Pay Act.

122. Plaintiff and the Class Members' unpaid wages have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

123. In violating Ohio law, Monro acted willfully, without a good faith basis and with reckless disregard to Ohio law.

124. As a result of Monro's willful violation, Plaintiff and Class Members are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**COUNT FOUR: UNLAWFUL RETALIATION IN VIOLATION OF THE FLSA**
**(On behalf of Plaintiff individually)**

125. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully rewritten herein.

126. 29 U.S.C. § 215(a)(3) prohibits the discharge or in any other manner discrimination against any employee for attempting to enforce their rights under the FLSA.

127. In January 2026, Plaintiff made multiple complaints to Monro regarding the illegal wage practices detailed herein.

128. In doing so, Plaintiff engaged in activity that is protected from retaliatory and discriminatory action under the FLSA.

129. By approximately February 1, 2026, Monro made the decision to terminate

Plaintiff's employment.

130. Plaintiff's attempts to avail herself to the rights afforded to him by the FLSA were the reason for her termination.

131. Any other reason that may be offered by Monro as the cause of Plaintiff's termination is pretext.

132. Monro's termination of Plaintiff was retaliatory and was in further violation of the federal and state law.

**WHEREFORE**, Plaintiff, Meagean Shriner, individually, and on behalf of all other similarly situated persons, requests that this Court grant the following relief in Plaintiff's, the Collective Members' and the Class Members' favor, and against Monro, Inc.:

A. For the Court to declare and find that Monro, Inc. committed one or more of the following acts:

   i. violated the overtime provisions of the FLSA;

   ii. willfully violated the wage and overtime provisions of the FLSA;

   iii. unlawfully retaliated against Plaintiff in violation of the FLSA;

   iv. violated the minimum wage and overtime provisions of the OMFWSA;

   v. willfully violated the minimum wage and overtime provisions of the OMFWSA;

   vi. willfully violated the Ohio Prompt Pay Act; and

   vii. unlawfully retaliated against Plaintiff.

B. For the Court to award damages in the amounts of all unpaid overtime wages and back pay due and owing to Plaintiff, the Collective Members and the Class Members;

C. For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b), in amounts to be determined at trial;

D. For the Court to award prejudgment and post-judgment interest on any damages awarded;

E. For the Court to award all treble damages, interest attorney fees and costs owed to Plaintiff and the Class Members;

F. For the Court to award Plaintiff's and the Class and Collective Members' reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b) and all other causes of action set forth in this Complaint;

G. For the Court to provide a reasonable incentive award for Plaintiff to compensate him for the time she spent attempting to recover wages for the Class and Collective Members and for the risks he took in doing so; and

H. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, the Collective Members and the Class Members hereby demand a jury trial on all causes of action and claims with respect to which they each have a state and/or federal constitutional right to a jury trial.

DATED: March 10, 2026

Respectfully submitted,

By: /s/ *James L. Simon*
James L. Simon (OH#0089483)
SIMON LAW CO.
11 ½ N. Franklin Street

Chagrin Falls, Ohio
Telephone: (216) 816-8696
Email: james@simonsayspay.com